CASE 62.—PENAL ACTION BY THE COMMONWEALTH AGAINST JOHN STRATMAN FOR VIOLATING SUNDAY LAW.—March 8, 1910.

## Stratman v. Commonwealth

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

THOS. R. GORDON, Judge.

Defendant convicted and appeals.—Reversed.

Statutes—Special Legislation—Regulation of Occupations—Barbering on Sunday.—While the work of barbering on Sunday may not be classed as a necessity, it is not such a business as warranted Ky. St. section 1322, putting it into a class by itself, and visiting on barbers a penalty more severe and different from those imposed by section 1321 on others following their usual occupations on Sunday; and such section 1322 must be held to discriminate unjustly and unreasonably against a class engaged in a perfectly harmless pursuit, and to be inoperative and void, as violating Const. section 59, subsecs. 4, 29, prohibiting a special law where the general law can be applied or local or special acts as to punishment of crimes or misdemeanors, or remission of fines, penalties, or forfeitures.

. KOHN, BAIRD, SLOSS & KOHN, EDWARDS, OGDEN & PEAK, HERMAN MORRIS, JAS. G. DENNY and GEORGE C. WEBB for appellant.

JAMES BREATHITT, Attorney General, JOS. M. HUFFAKER, O'NEAL & O'NEAL, C. H. MORRIS, TOM B. McGREGOR and FRYOR, SAPINSKY & CASTLEMAN for the commonwealth.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

This appeal involves the constitutionality of section 1322 of the Kentucky Statutes (Russell's St. sec. 3665) in which it is made unlawful to open a barber shop on Sunday and engage in the business of barbering. A penalty different from that fixed by section 1321, which is the general Sunday law, is provided. Appellant was proceeded against by penal action for the recovery of fines aggregating $55 for violating this section of the statutes on 11 different counts. He filed a general demurrer to the petition, which was overruled. He thereupon declined to plead further, and judgment was rendered against him.

The act in question was passed March 27, 1893, and is as follows: "That any person who engages in the business of barbering on Sunday shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than five dollars, and upon a second conviction for a like offense, shall be fined not less than ten dollars, and not more than twenty-five dollars, or imprisoned in the county jail for a period of not less than five days nor more than ten days, or be both fined and imprisoned, at the discretion of the court." Laws 1891-93, c. 170.

Two grounds are relied upon for reversal: First, that the act is unconstitutional, because it violates subsection 29 of section 59 of the Constitution, which provides, "In all other cases where the general law can be made applicable no special law shall be enacted;" and, second, that it is violative of subsection 4 of section 59, which prohibits the General Assembly from passing any local or special acts concerning various subjects, among which there are enumerated in

subsection 4 the following: ''Punishment for Crimes
—Remission of Fines. To regulate the punishment
of crimes or misdemeanors or to remit fines, penal-
ties or forfeitures.''

Section 1321 of the Kentucky Statutes, which makes
it unlawful for one to pursue his usual vocation on
Sunday, and provides a penalty for so doing, is as
follows: ''No work or business shall be done on the
Sabbath day, except the ordinary household offices,
or other work of necessity or charity, or work re-
quired in the maintenance or operation of a ferry,
skiff or steamboat, or steam or street railroads. If
any person on the Sabbath day shall be found at his
own, or at any other trade or calling, or shall employ
his apprentices, or other person, in labor or other
business, whether the same be for profit or amuse-
ment, unless such as is permitted above, he shall be
fined not less than two nor more than fifty dollars for
each offense. Every person or apprentice so em-
ployed shall be deemed a separate offense. Persons
who are members of a religious society, who observe
as a Sabbath any other day in the week than Sunday,
shall not be liable to the penalty prescribed in this
section, if they observe as a Sabbath one day in each
seven, as herein provided.''

It is most earnestly urged that, inasmuch as by this
general law all persons are prohibited from doing any
work or business on the Christian Sabbath, with cer-
tain exceptions, it applies with as much force to bar-
bers as to those engaged in any other vocation, call-
ing, or trade, and that therefore, as this general law
covers the subject and provides a penalty for its vio-
lation, the enactment of section 1322 is violative, first
of subsection 29, above referred to, and also of sub-
section 4, in that it provides a penalty or punishment

for barbers who violate the Christian Sabbath different from that which is provided by law for the punishment of others who violate the Sabbath. It is not contended that the Legislature is without authority to visit upon a certain class or character of violations of the Sabbath a higher or greater penalty than that visited upon other violations; but the ground upon which such higher cr more excessive punishment is justified is that the acts punished are especially hurtful, obnoxious, or injurious to society, and that, as the business of barbering could not be so considered, the Legislature was without authority to single it out and provide for it a penalty different from that which might be imposed upon the baker, or the merchant, or the bootblack, cr the grocer, who should be found guilty of following his usual vocation on the Sabbath.

In the case of Commonwealth v. Porter, 113 Ky. 581, 68 S. W. 622, 24 Ky. Law Rep. 366, in construing subsection 4 of section 59, this court said: "In the more recent case of Richardson v. Boske, 111 Ky. 893, 64 S. W. 919, 23 Ky. Law Rep. 1209, it was decided that numerous special laws relating to the fiscal affairs of Kenton and Campbell counties were repealed by the adoption of the general law with reference thereto. When the case of Comonwealth v. Cain, 77 Ky. 525, was decided, the Constitution did not prohibit special legislation, like that embodied in the charter of the gas company and the Warren Deposit Bank, and, as a result, innumerable special laws were enacted, prescribing different penalties for the same offense when committed in different counties of the state. And the constitutional convention intended by the enactment of section 59 and the schedule of the Constitution to prohibit this character

of legislation, and that they should be superseded by the adoption of general laws uniform in punishment and application throughout the commonwealth. As was well said in McTigue v. Commonwealth [99 Ky. 66] 35 S. W. 121, 17 Ky. Law Rep. 1418: 'Within the spirit of the Constitution, if not within its very letter, the law must inflict like penalties for the offenses. * * * We may well denounce as a delusion the crowning boast of the Constitution that systematic uniformity in the administration of the law had been provided for with proximate perfection, if this monument of local inconsistencies shall continue to mar the symmetry of our statutes. * * * Even without legislation, all laws not consistent with its spirit, which are not in terms repealed or made consistent in the meantime, stand repealed at the expiration of six years after the adoption of the Constitution.' ''

There is nothing in the business of barbering that is dangerous, hurtful, or injurious to society, and the reason for singling out this business and putting it in a class by itself, and visiting upon those who make their living by following it a more severe punishment than is imposed upon others who violate the Christian Sabbath by following their usual vocations, is wanting. In fact, instead of being hurtful to society, there is no trade, perhaps, that lends so much to the comfort, convenience, cleanliness, and good looks of the male portion of our citizenship. By many the barber is not looked upon as a luxury, but as a necessity, and there is much to be said in favor of the position of those who hold that it is as necessary that the barber shop should remain open a reasonable time on Sunday, for the accommodation of those absolutely in need of the barber's services, as it is that the livery

stable, the drug store, the news stand, or the restaurant should be kept open for the accommodation and convenience of the public.  While we do not subscribe to the idea that the work of barbering on Sunday may be classed as a necessity, still we are of opinion that it is not such a business as warranted the Legislature in putting it into a class by itself and visiting upon the barber a penalty more severe and different from that imposed upon others who follow their usual vocations on Sunday.

Counsel for appellant asks that if there were no general Sunday law, and the only provision of the statute in regard to working on Sunday was section 1322, relating to barbers, would the courts hold that the Legislature had the right to pick out barbers as a class and make it unlawful for them to work on Sunday, while all other tradespeople, merchants, and artisans might work on that day?  We think not. While the Legislature has the undoubted right to classify businesses, occupations, or trades, for the purpose of exercising the police power of the state, it has been held that such classification must be reasonable and natural.  Here the police power is exercised, not against the trade, but the violation of the Christian Sabbath.  It is not barbering that the law seeks to prevent, but merely barbering on Sunday— the violation of the Christian Sabbath.  The business of barbering on the Christian Sabbath is fully covered and provided for by section 1321, and hence no necessity for section 1322 exists.

The right of the Legislature to pass local or special legislation is considered and discussed in the case of City of Louisville v. Kuntz, 104 Ky. 584, 47 S. W. 592, 20 Ky. Law Rep. 805.  In that case reference is made to the several cases in which special acts had

been held to be constitutional, but it is pointed out that the reason therefor was because those cases were decided prior to the date upon which the present Constitution was adopted. Evidently, if the same question had arisen since the adoption of the present Constitution, the rule would have been otherwise. Questions similar to the one under consideration have been raised and passed upon by the courts of last resort in other states having constitutional provisions similar to our own, and with one exception such acts have been held to be unconstitutional.

In Missouri the Constitution is very like our own, in that it provides that no local or special laws shall be passed, and that, where a general law can be made applicable, no local or special law shall be enacted; and the Supreme Court of that state passed upon the validity of a special barber's act in the case of State v. Granneman, 132 Mo. 326, 33 S. W. 784, and, in holding it to be unconstitutional, said: ''Barbering is laboring, and the object of the act is to enforce an observance of the Sabbath and to prohibit that kind of labor on that day. The policy of our state is to compel the observance of Sunday as a day of rest, and if this may be done by a general law, applicable alike to all classes and kinds of labor, then the act falls within the inhibition of the paragraph of the Constitution quoted, which prohibits the Legislature from passing a special law where the general law can be made applicable. * * * The fact that labor on Sunday may be prohibited by proper legislation as a police regulation does not place the act beyond or without the inhibition of the Constitution. If the act is valid, then why may not the Legislature by one act prohibit the farmer from laboring on Sunday, by another the blacksmith, and so on, until all

kinds of labor on that day are prohibited? Clearly this may be done by a general law embracing all kinds of labor. The object of the Constitution is manifest. It was to prohibit special and local legislation and to substitute a general law in place of it wherever by a general law the same ends could be accomplished.''

In Indiana the Constitution is like our own, and in the case of Armstrong v. State, 170 Ind. 188, 84 N. E. 3, 15 L. R. A. (N. S.) 646, in passing upon the validity of a special barbers' act which imposed a punishment different from that which the violation of the general Sunday law provided for, the court said: ''It is well settled that a law is not necessarily general merely because it operates upon all within a defined class, but back of that fact must be found a substantial reason why it is made to operate upon such class. Classifications, when allowable, can only be made upon natural, intrinsic, or constitutional distinctness, and special privileges, peculiar disabilities, or burdensome conditions in the exercise of a common right may not be conferred or imposed upon a class of persons arbitrarily selected from the general body of citizens standing in the same relation to the subject-matter of the law. The class against which this act was directed was manifestly chosen arbitrarily, and without substantial ground upon which to justify the diversity of legislation. The business of barbering is cleanly in itself, and ordinarily conducted in a quiet and orderly way, and the suspension of such work on Sunday cannot be said to promote the health, comfort, or safety and welfare of society in general in any manner or to any degree other and different from a cessation of work in their ordinary vocations of life. It must follow, therefore,

that this act is special legislation, and violative of
the Constitution, and void."

The Supreme Court of California, in  Ex  parte
Jentzsch, 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664, in
holding a similar act to be unconstitutional,  said:
"The laboring barber, engaged in the most respect-
able, useful, and cleanly pursuit, is singled out from
the thousands of his fellows in other employments,
and told that, willy nilly, he shall not work upon holi-
days and Sundays after 12 o'clock noon. His wishes,
tastes, or necessities are not consulted. If he labors,
he is a criminal. Such protection to labor, carried a
little further, would send him from the jail to the
poorhouse.  How comes it that the legislative eye
was so keen to discern the needs of the oppressed bar-
ber, and yet was blind to his toiling brother in an-
other vocation? Steam car and street car operatives
toil through the long and weary Sunday hours; so
do mill and factory hands.  There is  no  Sunday
period of rest, and no protection, for the overworked
employes of our daily papers.  Do these not need rest
and protection? The bare suggestion of these con-
siderations shows the injustice and the inequality of
the law.  In brief, whether or not a general law to
promote rest from labor in all business vocations may
be upheld as within the due exercise of police power,
as imposing for its welfare a needed period of re-
pose upon the whole community, a law such as this
certainly cannot. A law is not always general be-
cause it operates upon all within  a  class.  There
must be back of that a substantial reason why it is
made to operate upon a class, and not generally upon
all.  As was said in Pasadena v. Stimpson, 91 Cal.
238 [27 Pac. 604]: 'The conclusion is that, although
a law is general and constitutional when it applies

equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.' And in Darcy v. San Jose, 104 Cal. 642 [38 Pac. 500]: 'This classification, however, must be founded upon differences which are either defined by the Constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation.' In the case of our cities the Constitution itself decrees a classification by population, and the differing exigencies of municpal government require that laws operating upon any class should be held general; otherwise, the constitutional scheme itself is overthrown. But in a law such as this no reason has been or can be shown why the followers of one useful and unobjectionable employment should be debarred from the right to labor upon certain days, and others in like classes of employment be not so barred. If it be constitutional to single one such class and debar its members from the right to labor upon certain days, it would be constitutional to prohibit them from following their vocation upon six days of the week. When any one such class is singled out and put under the criminal ban of a law such as this, the law not only is special, unjust, and unreasonable in its operation, but it works an invasion of individual liberty—the liberty of free labor, which it pretends to protect.  *  *  *  Here, however, a designated class is based upon no distinction, and as is said by Judge

Cooley: 'Every one has the right to demand that he be governed by general rules; and a special statute, that singles his case out as one to be regulated by a different law from that which is applied to all similar cases, would not be legitimate legislation, but an arbitrary mandate unrecognized by the law.' '' It will be observed from the opinion that the constitutional provision of California is similar to that of this state in so far as it declares that no local or special laws shall be passed in cases where general laws can be made applicable.

In Eden v. People, 161 Ill. 296, 43 N. E. 1108, 32 L. R. A. 659, 52 Am. St. Rep. 365, in passing upon the constitutionality of a law prohibiting barbering on Sunday, the court in conclusion said: ''If the public welfare of the state demands that all business and all labor of every description, except works of necessity and charity, should cease on Sunday, the first day of the week, and that day should be kept as a day of rest, the Legislature has the power to enact a law requiring all persons to refrain from their ordinary callings on that day. Cooley's Constitutional Limitations, 725. All will then be placed on a perfect equality, and no one can complain of an unjust discrimination. But when the Legislature undertakes to single out one class of labor harmless in itself, and condemn that and that alone, it transcends its legitimate powers, and its action cannot be sustained.''

The Supreme Court of New York, where the Constitution is similar to our own, by a divided court, held a special barber's act to be constitutional.

We are not cited to, nor have we found, an authority from any other court, regulated by constitutional provisions similar to our own, which holds

an act similar to the one under consideration to be constitutional. It is true the courts of last resort of Michigan, Oregon, and Tennessee have held similar acts constitutional; but there is nothing in the Constitutions of those states prohibiting the Legislatures from passing local or special legislation, and those cases cannot enter into our consideration in determining what the weight of authority is elsewhere. Excluding them from consideration, the decided weight of authority is against the constitutionality of such an act. Giving to the opinions of the courts above referred to, bearing upon this question, in those states having constitutional provisions similar to our own, the weight and consideration to which they are entitled, we are constrained to hold that the act in question discriminates unjustly and unreasonably against a class engaged in a perfectly harmless pursuit. No good reason is shown for such discrimination, and, the offense being fully covered by section 1321, there was no necessity for the passage of section 1322. It contravenes two plain provisions of the Constitution, and is, because thereof, inoperative and void.

Judgment reversed.