Lyman L. DAWSON et al., Appellants,

v.

A. Scott HAMILTON, Commonwealth Attorney, Jefferson County, Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

June 17, 1958.

James W. Stites, T. Kennedy Helm, Jr., Louisville, for appellants.

A. Scott Hamilton, Commonwealth Atty., Louisville, Jo M. Ferguson, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellees.

Lucian L. Johnson & Jack Q. Heath, Louisville, for amicus curiae, Kentucky Farm Bureau Federation.

CLAY, Commissioner.

This suit questions the constitutionality of House Bill 35 (Acts 1958, Ch. 15), enacted by the 1958 Legislature to become effective June 19, 1958, which undertakes to establish uniform standards of time for Kentucky. The circuit court declared the Act partially valid and partially invalid. Each of the opposing parties has taken an appeal, and we have been favored with excellent briefs by the plaintiffs, the Commonwealth, and the Kentucky Farm Bureau Federation as amicus curiae.

The Act provides:

"Section 2.160 is amended to read as follows:

[Section 1.]

"(1) The standard time fixed and prescribed for the Commonwealth of Kentucky *by Act of Congress or by order of the Interstate Commerce Commission* shall apply to and govern all laws, regulations and rules relating to the time of performance of any act by any officer or department of the Commonwealth, or of any county, city, or subdivision or agency thereof, or relating to the time that any right shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the Commonwealth, and in all the public schools and institutions of the Commonwealth and on the public works of the Commonwealth or any county, city or district thereof, or in all contracts or choses in action made or to be performed in the Commonwealth.

"(2) *No person, firm or corporation operating or maintaining a place of business of any kind shall employ, display, or maintain any other standard of time than that provided in this section.*

"Section 2. Any person who violates KRS 2.160 shall be fined not less than twenty-five dollars nor more than five hundred dollars, or imprisoned not less than ten days nor more than thirty days, or both. Each day of such violation shall be a separate offense.

"Section 3. No county, city, town, municipal corporation, agency or instrumentality of the Commonwealth shall employ any time or adopt any ordinance, resolution or order providing for the use of any time other than that specified in KRS 2.160.

"Section 4. The Commissioner of Finance shall not draw any warrant upon the State Treasury for the payment of Commonwealth funds to any county, city, town, municipal corporation, agency or instrumentality of the Commonwealth which uses or employs any time *or which has adopted* or hereafter adopts any ordinance, resolution or order providing for the use of any time other than that specified in KRS 2.160." (We have italicized those terms of the Act which raise the most serious constitutional questions.)

The effect of this Act is to require the observance by specified groups of the time standards now prescribed by regulations of the Interstate Commerce Commission, or as changed in the future by the Federal Congress or the Interstate Commerce Commission. Under the I. C. C. regulations now effective, it converts the long observed Eastern Time of Kenton, Boone and Campbell Counties (in Northern Kentucky and across the river from the metropolitan area of Cincinnati) to Central Time. Further east and south it places counties partly in one time zone and partly in another. (For example, Mason and McCreary.)

The Act does *not* establish a uniform or stable time standard for the state. Nor does it purport to fix time standards for all Kentucky citizens. It relates to public institutions and officers, and to persons, firms, or corporations who maintain places of business. Severe penalties for violation are imposed upon both groups.

Plaintiffs attack the Act on a number of grounds. The whole Court has reached

the conclusion that at least three of these objections are meritorious and are sufficient to invalidate the Act in its entirety.

■ The interested parties seem to be in agreement, and we likewise agree, that the legislature has the authority to establish time standards to be observed by public institutions, officers, and employees, and to make those standards applicable to contracts and public works of the Commonwealth. As a matter of fact, no attack is made upon Subsection (1) of Section 1 of the Act except insofar as it undertakes to gear the time standards of Kentucky to the *future* Acts of Congress or orders of the Interstate Commerce Commission. The defendants and amicus curiae concede that this Subsection properly must be construed to accomplish this result. While plaintiffs claim violation of Sections 51 and 60 of the Constitution as respects the manner of fixing the future standards, a more fundamental objection may be made under Section 29 that such provision constitutes an unconstitutional delegation of legislative power.

■ This principle of constitutional law is not violated by the adoption of laws or regulations of other states or the Federal Government. Thus the Act before us is not unconstitutional to the extent that it adopts an Act of Congress and/or regulations of the I. C. C. *effective as of the time the legislation was enacted.* (We will assume that the Act of Congress and the regulations of the I. C. C. are sufficiently identified in the Act, although a serious question may be raised on this point.) But future acts of Congress or orders of the I. C. C. are in a different category.

A pertinent annotation on the question may be found in 133 A.L.R. 401. There the author states, at page 401:

"Although there is some conflict, it is generally held that the adoption by or under authority of a state statute of prospective Federal legislation, or Federal administrative rules thereafter to be passed, constitutes an unconstitutional delegation of legislative power."

As authority for this statement are cited cases from Florida, Maine, Massachusetts, Nebraska, New York, and Pennsylvania. See, also, State v. Urquhart, Wash., 310 P. 2d 261, and cases cited therein. These authorities from other jurisdictions solidly support the rule quoted from the A.L.R. note.

Defendants cite two Kentucky cases which appear to uphold the type of delegation we have in the present case. They are James v. Walker, 141 Ky. 88, 132 S.W. 149; and Clay v. Dixie Fire Insurance Company, 168 Ky. 315, 188 S.W. 1123. The legislation involved in those cases was attacked under Section 60 of the Constitution, and the delegation question we have here was not discussed in the opinions. In addition there were other distinguishing features.

An eminent authority on constitutional law has observed:

"One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust."

Cooley's Constitutional Limitations, 8th Ed., Vol. 1, page 224.

■ The majority of the Court is of the opinion that this attempted delegation of

power to fix future time standards for Kentucky is improper for two reasons. First, it is the *continuing* duty and responsibility of the Kentucky legislature to determine what is for the best interests of Kentucky in the light of current conditions existing at the time of a law's enactment, and to transfer this responsibility is to abdicate the legislative power. Secondly, the time standard regulations of the I. C. C. are based upon interstate commerce considerations which have no direct relationship with the interests of Kentucky as a whole. As pointed out earlier in the opinion, the present I. C. C. regulations ignore state boundary lines and do not even conform to county lines. We have no assurance whatever that any future changes in these regulations, based on considerations entirely foreign to a uniform time standard for Kentucky, would conform to the best interests of our Commonwealth.

█ The objections just mentioned would seem particularly applicable to a penal statute, and our observations are strictly limited to the case before us. What conduct shall in the future constitute a crime in Kentucky or be subject to severe penalties is a matter for the Kentucky legislature to determine in view of the then existing conditions when the need for such a statute arises. See Darweger v. Staats, 267 N.Y. 290, 196 N.E. 61. It is not a matter that may be delegated to the Federal Congress or to the I. C. C.

██ It is therefore the opinion of the majority that Subsection (1) of Section 1 of the Act, to the extent that it adopts time standards *to be fixed in the future* by the Federal Congress or the I. C. C., is unconstitutional. This determination would not necessarily invalidate the entire Act, and it is necessary to consider other provisions thereof.

Plaintiffs contend that Subsection (2) of Section 1 of the Act is invalid, and the circuit court so decided. It provides as follows:

"No person, firm or corporation operating or maintaining a place of business of any kind shall employ, display, or maintain any other standard of time than that provided in this section."

This is perhaps the most significant part of the Act because it extends the original provisions of KRS 2.160 (not heretofore questioned) to persons, firms or corporations operating or maintaining places of business.

Plaintiffs contend this Subsection is not limited to *places of business,* but affects any individual in his private life if he happens to operate or maintain a place of business. Defendants contend the Section must be construed as relating only to places of business, apparently assuming that unless so restricted the Subsection would be unconstitutional.

██ We do not believe it necessary to decide this question. While the majority of the Court is of the opinion that a uniform standard of time is a proper subject of reasonable regulation by the legislature, even outside the field of governmental institutions and affairs, the classification found in Subsection (2) of Section 1 is arbitrary and unreasonable in violation of Section 59 of the Kentucky Constitution.

█ In view of the objective of the statute, which is to require the observance of uniform time standards in the interest of public convenience, there is no justifiable reason why the law should apply to the businessman, or to places of business, and not apply to others in other walks of life. To avoid the charge of special legislation, forbidden by Section 59 of the Constitution, there must be a substantial reason why a particular law is made to operate upon a class of citizens and not generally upon all. Strathman v. Commonwealth, 137 Ky. 500, 125 S.W. 1094, 27 L.R.A.,N.S. 949.

We have said:

"It is equally well established that the classification must be based upon some reasonable and substantial difference in kind, situation, or circumstance which bears a proper relation to the purpose of the Statute."

Schoo v. Rose, Ky., 270 S.W.2d 940, 941.

Again we emphasize the objective of the statute. Assuming it is desirable in the public interest to establish uniform time standards for Kentucky, and assuming the legislature may enact reasonable regulations with respect thereto affecting private persons, we can find no intrinsic or distinctive or other sound reason why a particular class or classes should be singled out and required to conform when others are not. With respect to the observance of time standards, the businessman and the farmer are similarly situated.

It is therefore the opinion of the Court that Subsection (2) of Section 1 is unconstitutional and invalid.

■ The final major objection to the Act is that Section 4 is arbitrary and unreasonable to the extent it severely penalizes any political subdivision or agency of the state "which has adopted" any ordinance, resolution or order providing for the use of any time other than that specified by the Act. Defendants contend that this provision does not mean what it says, and the statute was not intended to have a retroactive effect. There can be no question that this provision is unconstitutionally arbitrary if it penalizes the past acts of these institutions, particularly in view of the fact that the legislature itself, by statute, has heretofore authorized cities of the first class to adopt such an ordinance. On the other hand, we can find no reason why the legislature inserted this language unless it was to be honored. Even defendants insist it must be given some effect, at least to the extent that cities must repeal any such ordinances prior to June 19, 1958.

■ We are unable to determine the true legislative intent. If the language is construed as written, the provision is unconstitutional. If construed as defendants contend, it would require us to amend the Act. Particularly since this is a penal statute, we are not justified in extending its terms by construction. Commonwealth v. Malone, 141 Ky. 441, 132 S.W. 1033.

■ There are other objections to this legislation we deem it unnecessary to pass upon. Since we have decided that one of the most important provisions of the Act is unconstitutional (Section 1, Subsection (2)), that Section 1, Subsection (1) is partially unconstitutional, and that Section 4 is partially unconstitutional if construed as written, we are of the opinion that the legislative purpose in enacting this law cannot be carried out with the offending parts removed. The partial invalidity affects the entire Act. We therefore declare it, in its entirety, invalid. All members of the Court concur in this conclusion.

We must say that we are in sympathy with any proper method of securing a uniform time standard for Kentucky if such an end is practical and possible. Many difficulties stand in the way, because our state geographically lies on or near the dividing line between different natural time zones, and city people seem to enjoy "Daylight Saving" time. However, we are impelled to declare this attempt of the legislature to solve the problem abortive, because it offends constitutional provisions designed to protect the private and public rights of the people of this Commonwealth.

The judgment is affirmed in part and reversed in part for the entry of one consistent with this opinion.

CAMMACK, STEWART and BIRD, JJ., dissent from so much of the opinion as declares that the Act unconstitutionally delegates a legislative authority.

MOREMEN, C. J., and SIMS and MILLIKEN, JJ., dissent from the opinion to the

extent it recognizes the authority of the legislature to enact a penal statute requiring private individuals to observe a particular time standard in the conduct of their private businesses or affairs.